UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIRECTORS OF THE OHIO CONFERENCE OF PLASTERS & CEMENT MASONS COMBINED FUNDS, INC., | ) ) ) ) | CASE NO. 5:17-CV-125 |
| PLAINTIFFS, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | MEMORANDUM OPINION |
| INDUSTRIAL CONTRACTING CO., | ) ) ) | |
| DEFENDANT. | ) | |

In this action to recover unpaid employee benefit contributions, plaintiffs Directors of the Ohio Conference of Plasterers & Cement Masons Combined Funds, Inc. ("plaintiffs") have filed the following documents in support of their request for an entry of final judgment and the award of a sum certain against defendant Industrial Contracting Company ("defendant"): (1) Notice of Damages and Costs (Doc. No. 11 ["Damages Not."]), (2) Notice Demonstrating Reasonableness of Attorney's Fees Request (Doc. No. 12 ["Fees Not."]), and (3) Notice of Filing Attorney's Fees Billing Ledger under Seal (Doc. No. 14 ["Fees Ledger"]). Based upon these filings, and for the reasons set forth below, the Court enters final judgment in favor of plaintiffs and awards plaintiffs $130,948.07.

I. **BACKGROUND**

Plaintiffs are the "Directors of the entity responsible for collections for various employee benefit plans[.]" (Doc. No. 1 (Complaint ["Compl."]) ¶ 3.) On January 17, 2017, plaintiffs filed

suit against defendant, under § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and §§ 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, for breach of collective bargaining agreements between defendant and various local unions. After defendant failed to answer or otherwise respond to the complaint, plaintiff applied to the Clerk for entry of default, and the Clerk entered default against defendant on August 21, 2017. (Doc. No. 8.)

Plaintiffs subsequently moved for default judgment against defendant and for an order requiring an audit of defendant's books in order to determine the amount due and owing to plaintiffs. (Doc. No. 9 ["Mot. Default"].) In an order dated December 4, 2017, the Court granted the motion for default judgment as to liability and ordered defendant to submit to a financial audit to determine the amount due and owing plaintiffs in unpaid contributions under the collective bargaining agreements. (Doc. No. 10 ["Order Liab."].)

On February 26, 2018, plaintiffs filed a notice advising that the court-ordered audit of defendant's financial records was complete. The notice was supported by audit records and a declaration from the administrator. (Damages Not. at 162[1]; Doc. No. 11-1 (Audit Records); Doc. No. 11-2 (Declaration of Tim Myers ["Myers Decl."]).) According to the notice, the payroll audit revealed that the delinquent contributions owed to plaintiffs totaled $114,252.00, with related liquidated damages of $11,425.20 and interest of $16,485.04. (Damages Not. at 162.) The notice explained that these amounts were offset by payments to plaintiffs of $56,422.66, leaving a final amount due totaling $85,739.57. (*Id.*) With respect to attorney's fees, the administrator's declaration provided that "[t]hrough January 31, 2018, [plaintiffs] had paid $38,417.50 for legal

---

[1] All page numbers correlate to the page identification number generated by the Court's electronic docketing system.

services provided by [plaintiffs'] legal counsel[.]" (Myers Decl. ¶¶ 5-7.) Combined with the audit fees of $8,860 and $400 for the filing fee for this action, plaintiffs sought an entry of judgment in the amount of $133,417.07. (Damages Not. at 163, citing Myers Decl. ¶ 6.)

After reviewing the notice and the supporting documents, the Court determined that plaintiffs had provided sufficient documentation to support their request for damages but had failed to properly support their request for attorney's fees. The Court granted plaintiffs leave to file sufficient documentation demonstrating the reasonableness of their fee request. (Non-Document Order dated 3-12-18.) On March 26, 2018, plaintiffs filed their notice demonstrating the reasonableness of their fees. In addition to a memorandum of law, their notice was supported by the declaration of the plaintiffs' attorney, Jennie G. Arnold (Doc. No. 12-2 ["Arnold Decl."]), and redacted billing statements from Ms. Arnold's law firm. (Doc. No. 12-1 (Redacted Billing Statements).) The notice provided that plaintiffs were now seeking $35,948.50 attorney's fees.[2] On April 18, 2018, at the direction of the Court, plaintiffs filed the un-redacted attorney billing statements under seal. (Doc. No. 14-1 (Unredacted Billing Statements).)

This Court now has sufficient materials before it to issue an award and final judgment in favor of plaintiffs pursuant to Fed. R. Civ. P. 55.

**II. DISCUSSION**

Having previously entered default judgment in favor of plaintiffs on the question of liability, the Court turns to plaintiffs' request for damages and fees. ERISA requires an employer to pay multiemployer trust fund contributions according to the terms and conditions of the

---

[2] This amount was less than was submitted in the previous notice of damages. Plaintiffs explained that, in reviewing the billing statements, they discovered amounts that were improperly included in the original amount sought. (Not. Fees at 173, n.1.)

collective bargaining agreements and benefit plans to which the employer is a signatory. *See* 29 U.S.C. § 1145. Trust funds, as fiduciaries, are authorized to enforce this requirement. *See* 29 U.S.C. § 1132(a)(3) (providing that a civil action may be brought by a fiduciary to enforce § 1145 or the terms of a plan). Furthermore, ERISA contains a mandatory scheme for remedying unpaid contributions whereby when a judgment in favor of the plan is awarded, the court "shall" award the plan the following: the unpaid contributions, interest on the unpaid contributions, an amount equal to the greater of the interest on the unpaid contributions or liquidated damages, and reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2) (emphasis added).

Although the court may conduct an evidentiary hearing to determine damages, such a hearing is not a perquisite to the entry of a default judgment where, as here, the supporting documentation is sufficient to allow for a decision on the record. *See Joe Hand Promotions, Inc. v. RPM Mgmt. Co., LLC*, No. 2:11-cv-377, 2011 WL 5389425, at *1 (S.D. Ohio Nov. 7, 2011) (citation omitted).

A. **Fringe Benefits**

Plaintiffs assert that they are entitled to $114,252.00 for fringe benefit contributions that defendant failed to distribute between July 1, 2016 to December 31, 2017. Attached to the administrator's declaration is the audit report and supporting documentation. The report lists the contributions owed to each employee, grouped by membership in the various local unions with which defendant had entered into collective bargaining agreements. The payroll audit records substantiate plaintiffs' claim of unpaid contributions. Accordingly, the Court finds that plaintiffs are entitled to $114,252.00 for delinquent fringe benefit contributions.

B. **Liquidated Damages**

Plaintiffs also seek liquidated damages in the amount of ten percent of the owed fringe benefit contributions. ERISA allows for an award of liquidated damages "provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount of [unpaid contributions determined by the court]." 29 U.S.C. § 1132(g)(2)(C)(ii). The governing collective bargaining agreements, and supporting trust documents, provide for a liquidated damages award of 10 percent of the owed fringe benefit contributions. (*See* Doc. No. 1-3 (Local 109 CBA), Art. VII, § 3 at 48; Doc. No. 1-4 (Local 132 CBA), Art. IX at 68-71; Doc. No. 1-5 (Local 404 CBA), Art. XII, § 12.06 at 92; Doc. No. 1-6 (Ohio Conference of Plasterers & Cement Masons Combined Funds Collection Policy) at 112.) Accordingly, the Court finds that plaintiffs are entitled to liquidated damages in the amount of $11,425.20, representing 10 percent of the unpaid fringe benefit contributions.

C. **Interest**

Plaintiffs also seek interest in the amount of $16,485.04 on the unpaid contributions under 29 U.S.C. § 1132(g)(2)(B). The interest is supported by the audit report, and the Court shall award interest in the amount sought.

D. **Conclusion on Damages**

Plaintiffs have demonstrated that they are entitled to $114,252.00 in unpaid contributions, liquidated damages in the amount of $11,425.20, and interest in the amount of $16,485.04, for a total of $142,162.23.[3] This amount is offset by three third-party contributions totaling

---

[3] By the Court's calculations, this figure should be $142,162.24. Plaintiffs' calculations appear to be the result of a typographical error in the Audit Report. (*See* Audit Report at 169.) Nonetheless, because plaintiffs' number is lower, the Court will rely on that figure.

$56,422.66. (*See* Audit Report at 169.) Accordingly, the Court awards plaintiffs $85,739.57 in damages and interest.

E. **Attorney's Fees and Costs**

Section 1132(g)(2) provides for "reasonable attorney's fees and costs of the action, to be paid by the defendant . . . ." 29 U.S.C. § 1132(g)(2)(D); *see Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 936 (6th Cir. 1996) (An award of attorney's fees is mandatory under § 1132(g)(2)). "The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551-52 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L.E.2d 40 (1983)). "Where the party seeking attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled."[4] *Id.* at 552 (citation omitted). In support of their request for fees, plaintiffs have submitted an affidavit from lead counsel, Ms. Arnold. This affidavit sets forth the hourly rates charged by each attorney and legal assistant who worked on this case, and the attached billing statements detail the actual work performed by each legal professional.

---

[4] After the lodestar amount is determined, a court may make adjustments based on twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.

The Court begins with the hourly rates charged. To determine a reasonable hourly rate, courts initially assess the "prevailing market rate in the relevant community." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quotation marks and citation omitted); *see Trs. of the N.W. Ohio Plumbers & Pipefitters Pension Plan v. Helm & Assoc.*, No. 3:10CV739, 2012 WL 3619827, at *1 (N.D. Ohio Aug. 21, 2012). The market rate must reflect the "training, background, experience, and skill of the individual attorney" who litigated the case. *Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 638 (6th Cir. 1979).

In her declaration, Ms. Arnold, lead counsel for plaintiffs, states that she graduated from law school in 2006. (Arnold Decl. ¶ 3.) She avers that she has litigated ERISA matters continuously since being admitted to the Ohio bar in 2009. (*Id.* ¶ 4.) Further, plaintiffs note that as many as eight years ago, while Ms. Arnold was still an associate with her law firm, she was awarded $375 as a reasonable hourly rate for ERISA cases. (Not. Fees at 176, citing *Robert Adkins v. Special Metals Corp.*, No. 09-cv-116-HRW (E.D. Ky. June 10, 2010)).

For purposes of billing in this case, plaintiffs used an hourly rate of $200 for partners, and $185 for associate attorneys. (Not. Fees at 174.) These rates are consistent with rates approved by other courts within the Sixth Circuit. *See, e.g., Helm*, 2012 WL 3619827, at *2 (finding an hourly rate of $300 for ERISA partners to be reasonable); *Mikolajczyk v. Broadspire Servs., Inc.*, 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007) (finding hourly rate of $250 reasonable in an ERISA action); *see also Kauffman v. Sealia Med. Ctr., Inc.*, No. 204-cv-543, 2007 WL 490896, at *3 (S.D. Ohio Feb. 9, 2007) (finding an hourly rate as high as $325 to be reasonable for ERISA partners and hourly rates between $210 and $235 to be reasonable for associates). Based upon the relevant case law and the supporting materials filed by plaintiffs, the Court finds that an

hourly rate of $200 for partners and $185 for associates is reasonable. The Court also finds an hourly rate of $85 for the work of paralegals to be reasonable. *See, e.g., Hayden v. Martin Marietta Materials, Inc.*, No. 5:11-CV-116, 2012 WL 5362871, at *8 (W.D. Ky. Oct. 31, 2012) (approving paralegal rates of $100 per hour); *Helm*, 2012 WL 3619827, at *2 (approving paralegal rate of $80 per hour).

With respect to the number of hours expended, the fee request includes a total of 197 hours, with 62.8 partner hours, 132.8 associate attorney hours, and 1.4 paralegal hours. (Not. Fees at 178.) Plaintiffs readily acknowledge that this number and the resulting fees are larger than are typical in ERISA default cases, but they insist that this case was not typical. (*Id*. at 174.) Plaintiffs explain that, because defendant was a signatory to several collective bargaining agreements, plaintiffs' counsel had to expend a considerable number of hours communicating with various plan trustees on behalf of local labor organizations and then formulating and submitting to defendant demands and payment plans with respect to each plan. Given the fact that defendant initially expressed an interest in resolving the matter short of litigation, counsel also expended time in negotiations and drafting a settlement agreement and consent judgment, which defendant ultimately rejected. (*Id*. 178-79.)

Once the lawsuit was filed, plaintiffs' counsel was required to execute liens within and around the State of Ohio in an effort to collect on the delinquent contributions sought in the matter herein. This included drafting public funds' lien affidavits and filing them with the county recorder. Counsel also drafted and filed a mechanic's lien affidavit, properly recorded it, and served it on defendant's counsel. (*Id*., citing Arnold Decl. ¶ 7.)

The Court finds that the claimed hours were appropriately performed in furtherance of

this ERISA collection action which culminated in a favorable default judgment and, as such, the recovery of fees for these efforts is appropriate. *See Tr. of the E. States Health & Welfare Fund v. Crystal Art. Corp.*, 132 F. App'x 390, 391 (2d Cir. 2005) (concurrent action including NLRB action and related arbitration resulted in fees that were recoverable in ERISA action) (citation omitted); *see, e.g., Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*, No. 03-71056, 2004 WL 3105944 (E.D. Mich. Sept. 28, 2004). In *Iron Workers' Local No. 25*, the court found that legal hours expended in an ERISA collections action pursuing liens was properly compensable. In reaching this conclusion, the court reasoned that "the legislative history of § 1132(g) supports awarding the costs of collection efforts[,]" citing proceedings from the Senate Committee on Labor and Human Resources wherein the committee discussed the problems associated with delinquent employer contributions and the need for prevailing plans to recover all costs associated with collections actions. *Id* at *8-9 (citing Staff of Senate Committee on Labor and Human Resources, 96th Cong., 2d Sess., S. 1076: The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration at 43-44 (Comm. Print 1980)). Based on "the remedial purpose of § 1132(g) and Congress's concern for the negative financial impact caused by delinquent benefit contributions on multiemployer benefit plans, the Court [found] that [the plans were] entitled to recover the attorney's fees incurred in collecting the delinquent contributions in th[e] matter." *Id*. The Court agrees with this analysis and finds these fees properly recoverable herein.

F. **Conclusion on Attorney's Fees and Costs**

The Court has reviewed plaintiffs' counsel's billing records and finds that the billing entries sufficiently describe the work performed and that the hours expended were reasonable

and necessary. Moreover, the hourly rates charged by plaintiffs' counsel are reasonable in light of prevailing rates in the relevant market. Accordingly, the Court awards plaintiffs $35,948.50 in attorney's fees. Further, plaintiffs are also entitled to audit fees in the amount of $8,860.00 (Meyers Decl. ¶ 5), and $400.00 in court filing fees. (*Id*. ¶ 7.)

### III. CONCLUSION

For all of the foregoing reasons, the Court enters final judgment in favor of plaintiffs, and awards plaintiffs $130,948.07, representing unpaid contributions, liquidated damages, interest, attorney's fees, court filing fees, and audit fees. Interest shall accrue at the statutory rate from the time of this judgment.

**IT IS SO ORDERED**.


Dated: June 7, 2018

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**